ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 3 0 2014

CLERK, U.S. DISTRICT COURT
By_____
    Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| LOREAL LUMAR,<br>    PLAINTIFF,<br><br>VS.<br><br>CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF SOCIAL<br>SECURITY,<br>    DEFENDANT. | §<br>§<br>§<br>§   CIVIL ACTION NO. 4:13-CV-836-O<br>§<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE
## AND
## NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Loreal Lumar ("Lumar") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II. In April 2011, Lumar protectively filed her application, alleging that her disability began on December 1, 2010. (Tr. 10, 114-17.) Her application for benefits was denied initially and on reconsideration. (Tr. 10, 65-74.) The ALJ held a hearing on May 22, 2012 and issued a decision on July 19, 2012, finding that Lumar was not disabled because there were jobs that existed in significant

1

numbers in the national economy that Lumar could perform. (Tr. 10-20, 28-60.) On September 13, 2013, the Appeals Council denied Lumar's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1-6.)

## II. STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e). And fifth, the impairment must prevent the claimant from doing any work,

considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

### III. ISSUES

In her brief, Lumar presents the following issue: Whether the ALJ erred in failing to give controlling weight to the opinions of Lumar's two treating physicians. (Plaintiff's Brief ("Pl.'s Br.") at 2, 12-23.)

### IV. ALJ DECISION

In her July 19, 2012 decision, the ALJ found that Lumar had not engaged in any substantial gainful activity since December 1, 2010, the alleged date of Lumar's onset of her disability. (Tr. 10-11, 19.) The ALJ further found that Lumar suffered from the following severe impairments: fibromyalgia, degenerative joint disease, and cervical dystonia. (Tr. 11, 19.) Next, the ALJ held that none of Lumar's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 11, 19.) As to Lumar's RFC, the ALJ stated:

> The claimant retains the functional capacity to perform the exertional requirements of lifting 10-pounds occasionally and less than 10-pounds frequently; standing and walking 3-hours of an 8-hour workday with normal breaks; sitting 6-hours of an 8-hour workday; engage in occasional climbing, balancing, stooping, crouching, crawling, and kneeling; and occasional bilateral reaching.

(Tr. 19; see Tr. 18.) Next, the ALJ found that Lumar was unable to perform any of her past relevant work. (Tr. 18-19.) However, considering Lumar's age, education, work experience, and RFC, the ALJ concluded, based upon the vocational expert's opinion that there were jobs that existed in significant numbers in the national economy, that Lumar was not disabled. (Tr. 18-19.)

## V. DISCUSSION

Lumar argues that the ALJ erred in failing to give controlling weight to the opinions of two of Lumar's treating physicians. (Pl.'s Br. at 12-23.) Specifically, Lumar states:

> In this case, the record contains three physical assessments of Lumar's ability to perform certain work related functions, two by Dr. Basu, and one by Dr. Hurschman. (Tr. at 264-267, 484-485, 554-555). The decision notes that both of Dr. Basu's assessments were internally consistent, and consistent with Dr. Hurschman's assessment, and all three opinions suggested a less than sedentary RFC. However, the decision found that both doctor's treatment records failed to demonstrate such restrictive limitations. (Tr. at 15). Later, the decision acknowledges that treating source opinions are usually "entitled to special weight," but that the ALJ is "free to object to any physician's opinion when the evidence supports a contrary conclusion." (Tr. at 16). The decision does not provide controlling weight to the doctor's opinions because the opinions are allegedly "not consistent with the medical evidence or the claimant's work activities which will be discussed later in this decision." (Tr. at 16).

(Pl.'s Br. at 13.) In addition, Lumar argues that the ALJ's reasons for rejecting the opinions of her treating specialists are invalid. (Pl.'s Br. at 13-20.) Lumar claims that the ALJ's reliance on the MRI results is legal error as Lumar's conditions "can not be discovered or diagnosed through MRIs as these conditions are not musculoskeletal in nature." (Pl.'s Br. at 14.) Moreover, Lumar states that, "[a]s to the alleged lack of evidence of motor or strength loss, and lack of sensory deficits during physical exams, once again this finding shows a lack of understanding of Lumar's conditions and fails to cite evidence from her physical exams indicating abnormalities." (Pl.'s Br. at 15.) Lumar argues that the treating physicians' objective results and consistent symptoms documented in the record do actually support their limitations in their RFC assessments. (Pl.'s Br. at 15-19.) In addition, Lumar claims that her part-time work, which was not found to constitute substantial gainful activity, cannot be used to attack the three assessments from her

5

treating physicians. (Pl.'s Br. at 20.) Finally, Lumar argues that the ALJ failed to consider any of the required factors set forth in 20 C.F.R. § 404.1527(c)[1] before, in essence, rejecting the opinions of Drs. Hurschman and Basu.

RFC is what an individual can still do despite his limitations.[2] Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

---

[1] The Court notes that Lumar actually cited to 20 C.F.R. § 404.1527(d) in her brief. (Pl.'s Br. at 21.) This appears to be an inadvertent error.

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

In making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. § 416.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (superseded only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.") In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

Furthermore, controlling weight is assigned to the opinions of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). While opinions on the ultimate issue of disability status are reserved to the ALJ, he must

consider all medical opinions. 20 C.F.R. § 404.1527(b), (d)(1). Because the determination of disability always remains the province of the ALJ, he can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 566; *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994); *Muse*, 925 F.2d at 790. Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

In *Newton v. Apfel*, the Fifth Circuit Court of Appeals held that "absent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). Under the statutory analysis, the ALJ must evaluate the following: (1) examining relationship; (2) treatment relationship, including the length, nature, and extent of the treatment relationship, as well as the frequency of the examination(s); (3) supportability; (4) consistency; (5) specialization; and (6) other factors which "tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(c), 416.927(c); SSR 96-6p, 1996 WL 374180, at *3 (S.S.A., July 2, 1996); SSR 96-2p, 1996 WL 374188, at *4 (S.S.A. July 2, 1996).

Pursuant to *Newton*, however, the ALJ is required to perform a detailed analysis of the treating physician's views under the factors set forth in 20 C.F.R. § 404.1527(c) *only* if there is

no reliable medical evidence from another treating or examining physician that controverts the treating specialist. *See Newton*, 209 F.3d at 455–57. An ALJ does not have to perform a detailed analysis under the factors in the regulation "where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another," as well as in cases in which "the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *Id.* at 458; *see Alejandro v. Barnhart*, 291 F. Supp. 2d 497, 507–11 (S.D. Tex. 2003); *Contreras v. Massanari*, No. 1:00-CV-242-C, 2001 WL 520815, at *4 (N.D. Tex. May 14, 2001) ("The Court's decision in *Newton* is limited to circumstances where the administrative law judge summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant.")

In this case, as stated above, the ALJ found that Lumar had the RFC to lift ten pounds occasionally and less than ten pounds frequently; stand and walk three hours in an eight-hour workday with normal breaks; sit six hours in an eight-hour workday; and engage in occasional climbing, balancing, stooping, crouching, crawling, kneeling, and bilateral reaching.[4] (Tr. 19.)

---

[4] Sedentary work is defined as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). To perform the full range of sedentary work, an individual must be able to remain in a seated position for approximately six hours of an eight-hour workday and stand and walk for

In making the physical RFC determination, the ALJ reviewed, *inter alia*, the following evidence in the record: (1) the results of a cervical MRI taken in January 2009; (2) the extensive examination records from Dr. Basu; (3) the extensive examination records from Dr. Hurschman; (4) the results of a lumbar spine MRI taken in January 2011; (5) the results of a right hip MRI taken in March 2011; (6) treatment records from an April 2012 visit to the emergency room for musculoskeletal pain; (7) Lumar's testimony at the hearing before the ALJ; and (8) an August 29, 2011 Physical Residual Functional Capacity Assessment ("PRFCA") in which State Agency Medical Consultant Randal Reid, M.D. ("SAMC Reid") opined at the reconsideration level that Lumar could: (a) lift and/or carry ten pounds occasionally and less than ten pounds frequently; (b) stand and/or walk three hours in an eight-hour workday; (c) sit for a total of about six hours in an eight-hour workday; (d) occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and (e) occasionally engage in bilateral reaching. (Tr. 418-25). (Tr. 11-17.) In addition, the ALJ stated:

> The Administrative Law Judge has reviewed Dr. Basu's two residual functional capacity questionnaires on behalf of the claimant. The first one completed on April 5, 2011 indicated that Dr. Basa [sic] has been treating the claimant for 2 ½ years. He completed a second Residual Functional Capacity Questionnaire on November 20, 2011. His answers were exactly the same on both questionnaires. Dr. Basu has limited the claimant to less than sedentary residual functional capacity, but the treatment record fails to demonstrate such restrictive limitations. The undersigned has also reviewed Dr. Hurschman's residual functional capacity questionnaire completed on May 12, 2012. Additionally, the undersigned notes that both physicians' residual functional capacity questionnaires indicated the same limitations as far as walking and

---

approximately two hours of an eight-hour day. *See* Social Security Ruling ("SSR") 96-9p, 1996 WL 374185, at *6 (S.S.A. July 2, 1996).

sitting, same limitation for lifting/carrying, and same limitations for handling and fingering. However, Dr. Hurschman's medical records failed to demonstrate such restrictions.

. . . .

While the opinion of the treating physician is generally entitled to special weight, the Administrative Law Judge is free to object to any physician's opinion when the evidence supports a contrary conclusion. The Administrative Law Judge has considered the findings of the two treating physicians, but controlling weight will not be given since it is not consistent with the medical evidence or the claimant's work activities which will be discussed later in this decision.

In accordance with Social Security Ruling 96-6p, the undersigned Administrative Law Judge has reviewed the medical source opinions by state medical examiners which have been considered but not adopted since these opinions were based on information contained in the record at the time of the state agency reconsideration determination. They determined that the claimant was capable of a wide range of light work activity at the initial determination. At the reconsideration level, they determined that the claimant was capable of wide range of sedentary work activity. The Administrative Law Judge finds that the determination made at the reconsideration level is persuasive and consistent with the medical evidence of record.

. . . .

The Administrative Law Judge notes that the claimant's allegation of the complete inability to perform any substantial gainful work activity is lacking credibility. The medical records revealed that the MRI scan of the claimant's cervical spine was normal. The claimant had a disc bulge at the L5-S1 level. However, the MRI scan showed no disc herniation or stenosis. She had normal SI joints. She had no sensory deficits and she had normal muscle strength. She has no abnormality of motor function. She had normal strength in her right and left upper extremity. By August 9, 2011, Dr. Basu reported that the claimant's connective tissue disease was stable.

Additionally, the medical records indicated that the claimant began having physical complaints in 2009 and began seeing a rheumatologist and a pain management specialist at that time. The progress reports indicated improvement with her symptoms with the various treatments. The claimant continued to work full time through 2009 and 2010. . . . In spite of her pain and receiving pain

11

management treatment which began around 2009, the claimant continued to work through November 2011.

(Tr. 15-18 (internal citations omitted).)

In the present case, as set forth above, the ALJ rejected the three physical RFC determinations made by Lumar's treating physicians, Dr. Hurschman and Dr. Basu in making his RFC determination.[5] While Lumar disagrees with the ALJ's reasons for rejecting the RFC determinations made by Drs. Hurschman and Basu, there is substantial evidence in the record, including SAMC Reid's PRFCA, that supports the ALJ's RFC and disability determination. (Tr. 14.) Consequently, any error relating to the failure of the ALJ to properly analyze Drs. Hurschman and Basu's opinions would be harmless error. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required."); *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *McNeal v. Colvin*, No. 3:11-CV-02612-BH-L, 2013 WL 1285472, at *72 (N.D. Tex. Mar. 28, 2013) (applying harmless error analysis to the ALJ's improper evaluation of opinion of treating physician); *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006) (in the Fifth Circuit, harmless error exists when it is inconceivable that a different administration conclusion would have been reached absent the error).

Moreover, contrary to Lumar's assertions, the ALJ did properly address the statutory factors listed in 20 C.F.R. § 404.1527(c) before rejecting Drs. Hurschman and Basu's opinions in their physical RFC assessments. To begin with, the ALJ went through Drs. Hurschman and Basu's examination and treatment records in explicit and thorough detail. (Tr. 11-18.) As to

---

[5] The Court notes that Dr. Basu also completed two mental capacity assessments on behalf of Lumar. (Tr. 16, 268-71, 486-88.) Because Lumar does not allege any errors as to the treatment of any mental impairments, the Court will not address such impairments.

factors one and two under which the ALJ evaluates the examining and treatment relationship between Lumar and Drs. Hurschman and Basu, the ALJ explicitly stated that Drs. Hurschman and Basu were Lumar's treating physicians and the ALJ was clearly aware of their extensive treatment of Lumar. (Tr. 11-18.) *See* 20 C.F.R. § 404.1527(c)(1) & (2). As to factors three, four, and six under which the ALJ evaluates the supportability and consistency of the physician's opinion, as well as any other factors that "tend to support or contradict the opinion," the ALJ, after reviewing the other evidence in the record and as set forth above, listed out other evidence in the record that contradicted Drs. Hurschman and Basu's opinions in the medical source statement. (Tr. 16-18.) *See* 20 C.F.R. § 404.1527(c)(3), (4), (6). While Lumar disagrees with the ALJ's reasons, the Court notes, as set forth above, that SAMC Reid's PRFCA supports the ALJ's physical RFC determination. As to factor five, in which more weight is generally given "to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist," the ALJ specifically noted that Dr. Hurschman is a pain management specialist (Tr. 12) and Dr. Basu is a rheumatologist (Tr. 11). 20 C.F.R. § 404.1527(c)(5). Because the ALJ properly considered the factors set forth in 20 C.F.R. § 404.1527(c) before rejecting Drs. Hurschman and Basu's opinions, the Court concludes that remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **January 13, 2014** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED December 30, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv